IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01219-MSK-KLM

CYPRESS ADVISORS, INC., a Florida corporation, d/b/a THE CYPRESS GROUP,

      Plaintiff,

v.

KENT MCCARTY DAVIS, an individual, and
C SQUARED ADVISORS, LLC, a North Carolina limited liability company,

      Defendants.

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants, Kent McCarty Davis ("Davis") and C Squared Advisors, LLC ("C Squared") (collectively, "Defendants"), through their counsel, IRELAND STAPLETON PRYOR & PASCOE, PC, respectfully move for summary judgment on all claims asserted by Plaintiff Cypress Advisors, Inc. ("Plaintiff" or "Cypress Advisors"), pursuant to Fed. R. Civ. P. 56.

Undersigned counsel discussed the grounds for this motion and the relief requested with counsel for Plaintiff.  Plaintiff opposes the relief requested herein.

### INTRODUCTION

This is a business divorce case arising from the exact same events and transactions alleged in Case No. 16-CV-01935-MSK-MEH (the "2016 Lawsuit") currently pending before this Court.  After Plaintiff filed the 2016 Lawsuit as a preemptive strike against Davis's claims relating to Plaintiff's wrongful termination of the parties' 15-year partnership, Plaintiff filed this

second lawsuit as part of an anticompetitive effort to prevent Davis from operating a competing venture.

Although Davis moved for summary judgment on all the same claims that were asserted by Plaintiff in the 2016 Lawsuit, duplicative claims are asserted against him and his company, C Squared, in this action. In addition to these duplicative claims, Plaintiff has asserted several meritless "false advertising" claims and a tortious interference claim in this action. As explained below, judgment dismissing these claims under Fed. R. Civ. P. 56 is appropriate and will streamline the genuine issues to be tried in this matter and the 2016 Lawsuit.

## RELEVANT BACKGROUND

Dean Zuccarello ("Zuccarello") and Davis worked together as business partners for more than fifteen years in a partnership known as The Cypress Group (the "Partnership"). In 2016, Zuccarello wrongfully terminated Davis (without the authority to do so) and forced him out of the Partnership. Thereafter, Zuccarello preemptively filed the 2016 Lawsuit, knowing Davis would be asserting claims against Plaintiff and Zuccarello related to the wrongful dissociation. In the 2016 Lawsuit, Zuccarello (through Cypress Advisors, Inc., the entity that represented Zuccarello's interest in the Partnership) asserted claims against Davis and Cypress International, Inc. (the entity that initially represented Davis's interest in the Partnership) for:

(1)     Declaratory relief regarding the ownership and control of the partnership;

(2)     Misappropriation of alleged trade secrets;

(3)     Civil theft of alleged trade secrets;

(4)     Civil theft related to a disputed client payment in the amount of $1,031.91;

(5)     Conversion related to the same disputed client payment;

2

(6)     Intentional interference with contractual relations relating to three Partnership clients that Davis allegedly continued to work with after Zuccarello's wrongful termination of the Partnership;

(7)     Breach of contract related to a non-existent oral agreement; and

(8)     Unjust enrichment.

(*See generally* Exhibit 1, First Amended Complaint, *Cypress Advisors, Inc. v. Kent McCarty Davis d/b/a Cypress International, Inc.*, Civ. No. 16-cv-01935-MSK-MEH.) In the 2016 Lawsuit, Davis asserts counterclaims related to his ownership interest in the Partnership and damages he suffered as a result of the wrongful conduct of Plaintiff and Zuccarello before and after their wrongful termination of the Partnership. (*See generally* Exhibit 2, Defendant's First Amended Answer, Counterclaims, and Jury Demand, *Cypress Advisors, Inc. v. Kent McCarty Davis d/b/a Cypress International, Inc.*, Civ. No. 16-cv-01935-MSK-MEH.)

In the 2016 Lawsuit, Davis moved for summary judgment on Plaintiff's two trade secret claims as well as Plaintiff's claims for intentional interference with contract, breach of contract, and unjust enrichment. (*See generally* Exhibit 3, Defendant's Motion for Partial Summary Judgment, *Cypress Advisors, Inc. v. Kent McCarty Davis d/b/a Cypress International, Inc.*, Civ. No. 16-cv-01935-MSK-MEH.) In his Motion for Partial Summary Judgment in the 2016 Lawsuit, Davis demonstrated that Plaintiff cannot present sufficient evidence to create a genuine issue of material fact as to whether: (i) Plaintiff possesses information that is protectable as a trade secret; and (ii) Plaintiff suffered any resulting damages. Davis's Motion for Partial Summary Judgment in the 2016 Lawsuit has been fully briefed and is pending before this Court.

Approximately six months after Plaintiff filed its claims against Davis in the 2016 Lawsuit, Plaintiff filed this second lawsuit in May 2017. In this lawsuit, Plaintiff asserts claims

3

against Davis's company, C Squared, for misappropriation and theft of trade secrets and for false advertising under the Lanham Act.  The trade secret claims against C Squared in this action are identical to the trade secret claims against Davis in the 2016 Lawsuit.  In this action, Plaintiff also asserts claims against Davis and C Squared for intentional interference with prospective business advantage, libel and civil conspiracy.[1]

In light of Plaintiff's voluntary dismissal of its claim under the Colorado Consumer Protection Act [ECF No. 89], the following claims remain pending against Defendants in this action:

(1)     Misappropriation of alleged trade secrets against C Squared;

(2)     Civil theft of trade secrets against C Squared;

(3)     False advertising under the Lanham Act against C Squared;

(4)     Intentional interference with prospective business advantage against Davis and C Squared;

(5)     Libel against Davis and C Squared; and

(6)     Civil conspiracy against Davis and C Squared.

[*See* ECF No. 1.]

Discovery is now closed in this action, and—as with the 2016 Lawsuit—the undisputed facts uncovered by the parties again confirm that Plaintiff cannot prove either of its trade secret claims.  Discovery in this matter has not done anything to remedy the infirmities identified by Davis in the 2016 Lawsuit regarding Plaintiff's deficient trade secret claims.  In fact, discovery in

---

[1] Plaintiff settled its claims against Defendant Jim Christopherson ("Christopherson") and voluntarily dismissed Christopherson from this case in January 2019.  [ECF No. 84.]

2988847.4

this case only served to further confirm that Plaintiff undertook no serious efforts to protect its allegedly proprietary information.   Moreover, discovery in this action confirmed that the economic formulas and models that Plaintiff uses to prepare financial projections for its customers were not developed by Plaintiff and are in fact owned as the work product of Christopherson, who has since granted Plaintiff a license to continue using this information under the terms of his settlement agreement.

Plaintiff's false advertising claims are similarly unsupported by evidence sufficient to prove all the essential elements of each claim.  Specifically, there is no genuine issue of material fact with respect to Plaintiff's Lanham Act claim because Plaintiff cannot make any showing that Defendants made any materially false statements.   Moreover, such statements did not misrepresent the nature of Defendants' work and Plaintiff has not suffered any injury as a result. Similarly, Plaintiff's libel claim is legally deficient because Plaintiff cannot cite to any admissible evidence that Defendants have published any false statements that have caused injury to Plaintiff.

The undisputed evidence further confirms that Plaintiff had no chance of landing the two potential contracts with which Defendant allegedly interfered.   The only two lost targets identified by Plaintiff were specifically cultivated by Davis and had no interaction with Plaintiff or Zuccarello at any time.   Moreover, after Zuccarello wrongfully pushed Davis out of the Partnership, Plaintiff made no effort to conduct any business with either client.

Finally, because each of the aforementioned claims alleged in this suit are unsupported by any facts, Plaintiff cannot maintain its claim for civil conspiracy.  Civil conspiracy is a derivative

2988847.4

claim that requires proof of an underlying wrongful act.  Because all of Plaintiff's other claims should be dismissed, Plaintiff's claim for civil conspiracy also fails.

In addition, a common theme across all of Plaintiff's legally deficient claims is the absence of any non-speculative damages that have actually been suffered by Plaintiff.  Plaintiff has not incurred any losses or otherwise suffered any injuries as a result of Defendants' actions, and this lawsuit is solely intended to impede Defendants' efforts to grow a competing venture, as is their absolute right.  Consequently, Defendants are entitled to summary judgment on all of Plaintiff's claims, and this needlessly duplicative lawsuit should be dismissed in its entirety.

## CLAIMS AND DEFENSES UPON WHICH JUDGMENT IS SOUGHT

### A.  C Squared is Entitled to Summary Judgment on Claim 1 – Misappropriation of Trade Secrets.

#### 1.  Burden of Proof and Elements.

Under Colorado law, to prove theft or misappropriation of trade secrets against C Squared, Plaintiff bears the burden of proof to demonstrate that: (1) Plaintiff possessed a valid trade secret, (2) that the trade secret was disclosed or used by C Squared without consent, and (3) that C Squared knew, or should have known, that the trade secret was acquired by improper means.  *Christou v. Beatport, LLC*, 849 F. Supp. 2d 1055, 1074 (D. Colo. 2012) (citing *Gates Rubber Co. v. Bando Chem. Indus. Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993)).

In determining whether information validly constitutes a trade secret, the Court must consider: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known to those inside the business; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the value of the information; (5) the amount of effort expended to obtain the information; and (6) the amount of

2988847.4

time and expense that it would take others to duplicate the information.  *Harvey Barnett, Inc. v. Shindler*, 143 F. Supp. 2d 1247, 1251-52 (D. Colo. 2001) (citing Cathy Stricklin Krendall, Colorado Methods of Practice § 19.25 (4th ed. 1997).

To recover damages on a tort claim like misappropriation of trade secrets, "[t]he amount of damages need not be 'established with mathematical certainty'; however, the fact of damage must be established and must be traceable to, and the direct result of, the [tortious] act."  *Gibbons v. Ludlow*, 304 P.3d 239, 246 (Colo. 2013) (quoting *Roberts v. Holland & Hart*, 857 P.2d 492, 497 (Colo. App. 1993)).

**2.** Elements that Cannot Be Proven by Plaintiff:  Element 1 – Plaintiff Cannot Establish It Possessed Any Trade Secret Information.

**A.**  In its Complaint (the "Complaint"), Plaintiff alleges generally that C Squared misappropriated Plaintiff's trade secrets.  [ECF No. 1, ¶¶ 74-82.]

**B.**  In discovery, Defendants propounded Interrogatory No. 8 which asked Plaintiff to "Describe in detail all of the alleged Trade Secrets that you allege were misappropriated and/or stolen by Defendants."   (*See* Exhibit 4, Plaintiff Cypress Advisors, Inc.'s Responses to Defendants Davis and C Squared Advisors, LLC's First Set of Written Discovery, at 15.)

**C.**  In response, Plaintiff refused to identify any specific trade secrets and instead incorporated by reference its response to Interrogatory No. 18 propounded by Davis in the 2016 Lawsuit.

**D.**  However, the response that Plaintiff incorporated by reference to this very simple and straightforward discovery request similarly refused to identify any of Plaintiff's alleged trade secrets with the requisite specificity.  (Exhibit 5, Plaintiff and Counterclaim-Defendants' Responses to Davis's First Set of Interrogatories, at 18.)

7

**E.** Instead, Plaintiff averred generally that it possessed "complex and unique business models, proprietary presentation packages, client databases, and form contracts used in its business of financial advisory services to the restaurant and franchise industry (the "Trade Secrets")." (*Id.*)

**F.** Similarly, in the Rule 30(b)(6) deposition of Plaintiff, when asked to identify the specific trade secrets it possessed, Plaintiff was unable to do so beyond generic allusions to its contact database, "financial models", "prospect lists", and "form documents".  (Exhibit 6, Cypress Advisors, Inc. Dep., at 15:11-16:21 (Jan. 9, 2019).)

**G.** It is well-established that a claimant cannot prevail on a claim for misappropriation of trade secrets without first identifying the trade secrets in sufficient detail: "It is hornbook law that 'the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.'" *Sutra, Inc. v. Iceland Exp., EHF*, No. CIV.A. 04-11360-DPW, 2008 WL 2705580, at *3 (D. Mass. July 10, 2008) (quoting Charles Tait Graves and Brian D. Range, Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute, 5 Nw. J. Tech. & Intell. Prop. 68, 69 (2006)).

**H.** Therefore, under Colorado law, to prevail on a claim of misappropriation of trade secrets, a party must first describe its trade secrets "with sufficient particularity to identify the existence of its claimed trade secrets" and may not simply rely on generic categories or catchall phrases to describe such secrets. *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 522 (Colo. App. 2011).

**I.** Here, Plaintiff has failed to describe its trade secrets with sufficient particularity to identify the existence of its claimed trade secrets.  Instead, Plaintiff has simply relied on

8

"generic categories" or "catchall phrases" to describe its alleged "secrets." *See Rumnock v. Anschutz*, 384 P.3d 1262, 1265 (Colo. 2016) (denying protective order because evidence of confidentiality of information given during deposition did not establish a trade secret). Absent particularity, Plaintiff's general statements fail to establish a trade secret as a matter of law. *See id.*; *see also Saturn Sys., Inc.* 252 P.3d at 522.

**J.** Beyond this basic definitional problem, the undisputed evidence further confirms that none of the generic categories of information claimed by Plaintiff actually constitute trade secrets.

**K.** The undisputed evidence confirms that the "Cypress contact database" was an amalgam of information supplied by Zuccarello and Davis and different independent contractors, including Christopherson. (Exhibit 7, Jim Christopherson Dep., at 120:16-125:16 (Jan. 18, 2019).)

**L.** Moreover, this database information was freely shared within the Partnership, including Plaintiff's operation, and automatically synced to the various devices maintained by Plaintiff's independent contractors. (*Id.* at 117:14-119:16.) Plaintiff made no effort to limit access to the database or to otherwise require individuals to return all of the database information once they stopped working with Plaintiff. (*Id.* at 119:17-120:15.)

**M.** Plaintiff's responses to Defendants' discovery requests in this action confirm that Plaintiff did not have a "written policy" relating to the use and security of its alleged trade secrets. (Ex. 4, at 18-19.) In responding to Christopherson's written discovery requests in this action, Plaintiff confirmed that all of its alleged trade secrets were made freely available to everyone that worked with Plaintiff during the relevant timeframe. (Exhibit 8, Plaintiff Cypress

Advisors, Inc.'s Response to Defendant Jim Christopherson's First Set of Written Discovery, at 12-13 ("Cypress states that all individuals who worked for Cypress were granted access to its trade secrets and confidential information if they were necessary for the individual to perform his or her job duties.").)

      **N.**  Plaintiff further failed to deny that in 2010, while Christopherson was working as an independent contractor for Plaintiff, Plaintiff directed Christopherson to copy all of Plaintiff's alleged trade secrets onto Christopherson's personal computer.  (*Id.* at 40-41.)

      **O.**  Plaintiff never required Christopherson to delete this information when he ceased working with Plaintiff and Plaintiff did not have any policy regarding its agents and contractors' use of information that Plaintiff hosted on a cloud-based Box.com account.  (Ex. 7, at 119:17-120:16, 126:13-:16 ("Q: Did Cypress have any policy while you were at Cypress with respect to how its cloud-based storage accounts should be used?  A: None that was ever made aware of to me.").)

      **P.**  With respect to the financial models, the undisputed evidence confirms that these models were created by Christopherson for his own use and during his own free time.  (*Id.*, at 94:12-117:4. ("Q: Did you consider this work your own property?  A: Absolutely.  Q: Why?  A: I – I created it.  I created it on my own time.  I wasn't – I was an independent contractor for Cypress.  I wasn't directed by Cypress to do it.  This was – this was something I did to make myself a more valuable financial person.").)  Christopherson elected to use this knowledge as part of the work that he performed as an independent contractor for Plaintiff.  (*Id.* at 102:13-:22.)

      **Q.**  The fact that the financial models are the property of Christopherson in the first instance is further confirmed by the settlement agreement that Plaintiff entered into with

Christopherson.  (*Id.* at 142:13-143:21.)  The settlement agreement expressly grants Plaintiff a license to use Christopherson's models and thereby implicitly confirms that these models were never owned by Plaintiff.  (Exhibit 9, Confidential Settlement Agreement and Mutual Release, at 3.)

**R.**  Accordingly, summary judgment is warranted on Plaintiff's First Claim for Relief – Misappropriation of Trade Secrets, for Plaintiff's failure to satisfy Element 1: identification of specific, protectable trade secrets.

**3.**  <u>Elements that Cannot Be Proven by Plaintiff:  Element 4 – Plaintiff Cannot Establish the Fact and Amount of Damage and Trace that Directly to Any Tortious Act of C Squared.</u>

**A.**  In the Complaint, Plaintiff alleges that as a result of the alleged misappropriation of trade secrets, "The Cypress Groups [*sic*] has been damaged, to an extent and in an amount to be proven at trial."  [ECF No. 1, ¶ 82.]

**B.**  In response to written interrogatories propounded by Defendants, Plaintiff failed to substantively answer Interrogatory No. 19, which asked Plaintiff to "Describe in detail all of the categories of damages that you claim to have suffered as a result of Defendants' allegedly wrongful acts and the amount of the damages that you contend that you have sustained with regard to each category of alleged damages."  (Ex. 4, at 27.)

**C.**  Instead of providing a substantive response, Plaintiff instead indicated that its damages calculations would be "subject to expert testimony."  (*Id.*)

**D.**  In deposition testimony in the 2016 Lawsuit,[2] all of Plaintiff's employees and/or contractors similarly confirmed in deposition testimony that they did not possess any knowledge of how Cypress calculated its damages.  (*See* Exhibit 10, John B. Hewetson Dep., at 186:11-187:17 (Feb. 22, 2018); Exhibit 11, Alan G. Dillsaver Dep., at 196:13-23 (Feb. 23, 2018); Exhibit 12, William Pabst Dep., at 184:6-185:8 (May 2, 2018); Exhibit 13, Daniel Collins Dep., at 149:8-150:1 (May 30, 2018); Exhibit 14, Nicole Zuccarello Dep., at 140:5-141:7 (May 16, 2018); Exhibit 15, Kimberly Zuccarello Dep., at 33:24-34:25 (June 4, 2018).)

**E.**  In the deposition of Shawn Fox in the 2016 Lawsuit, Mr. Fox admitted that he did not calculate any damages attributable to the alleged misappropriation of trade secrets.  Instead, all Mr. Fox did was add the damages requested on the claims for intentional interference with contractual relations and unjust enrichment.  (*See* Exhibit 16, Shawn Fox Dep., at 27:11-30:10 (June 1, 2018).)

**F.**  Similarly, in the present action, Mr. Fox's report makes no attempt to determine what harm Plaintiff might have suffered and/or what profit C Squared might have gained as a result of its alleged misappropriation of trade secrets.   (Exhibit 17, Expert Report of Shawn D. Fox (Aug. 31, 2018), at 33-34.)  Rather than attempt to link his damages calculation to what actually transpired in this case, Mr. Fox attempts to project the expenses that C Squared would have been forced to incur to obtain the alleged trade secrets in the absence of the alleged misappropriation.  (*Id.*)

---

[2] The parties stipulated that any deposition testimony from the 2016 Lawsuit may be used in connection with the instant action, and the Court has adopted that stipulation.  [ECF No. 80.]

**G.**  Beyond the highly speculative nature of these calculations, Mr. Fox's analysis wholly ignores the fact that if C Squared is found to possess information that it should not possess, C Squared can be ordered to return such information and will not derive any lasting benefit from the information.  Instead, the only benefit that C Squared will have realized will have been any undeserved profit that it earned in the meantime.  Again, however, Mr. Fox makes no attempt to calculate the actual amount of such alleged compensatory damages.

**H.**  To recover damages under Colorado law, damages must be proven to a reasonable degree of certainty and a damages claim "may not be sustained by evidence which is speculative, remote, imaginary, or impossible of ascertainment."  *Roberts*, 857 P.2d at 496-97 (citing *Lee v. Durango Music*, 355 P.2d 1083, 1087 (Colo. 1960)).

**I.**  Both the fact of damages and the amount of damages must be proved with reasonable certainty and may not be merely speculative.  *Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 174 (Colo. 1993) ("Lost profits are not recoverable if either the amount of the profit that would have been earned or the fact that the plaintiff would have earned them is too speculative, remote, imaginary, or impossible to ascertain." (quotation omitted)).

**J.**  Rule 56 permits motions for summary judgment directed not only to the entire case, but to issues and claims.  Fed. R. Civ. P. 56(a) (a party may move "for summary judgment on all or part of the claim").  Summary judgment may be used, therefore, to reduce or narrow a damages claim.  *See Sandoval v. Martinez-Barnish*, No. 09-CV-02434-WJM-MJW, 2012 WL 2871667, at *8-9 (D. Colo. July 12, 2012); *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366-67 (Fed. Cir. 2008), cert. denied, 555 U.S. 1049 (2008), mandate recalled and amended 557

F.3d 1377 (Fed. Cir. 2009) (affirming trial court's grant of summary judgment that plaintiff was not entitled to recover lost profits damages).

**K.** Here, Plaintiff has not identified any non-speculative damages that are attributable to the misappropriation of trade secrets claim. Simply adding damages requested on the duplicative claims for tortious interference with contractual relations and unjust enrichment that Plaintiff has asserted in this case and in the 2016 Lawsuit does not suffice to establish non-speculative damages on the standalone claim for misappropriation that Plaintiff has alleged against C Squared in this action.

**L.** Accordingly, Plaintiff's damages associated with the misappropriation of trade secrets claim are speculative, remote, and imaginary. Summary judgment dismissing the misappropriation claim is warranted.

**B. C Squared is Entitled to Summary Judgment on Claim 2 – Civil Theft of Trade Secrets.**

**1.** Burden of Proof and Elements.

To prove civil theft under Colorado law, Plaintiff bears the burden of proof to show that: (1) C Squared knowingly obtained control over Plaintiff's property without authorization, or by threat or deception; and (2) with the specific intent to permanently deprive Plaintiff of the benefit of the property. *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1161 (D. Colo. 2016); *see* C.R.S. § 18-4-401(1)(a). To recover lost profits damages on a tort claim for civil theft under Colorado law, (3) "[t]he amount of damages need not be 'established with mathematical certainty'; however, the fact of damage must be established and must be traceable to, and the direct result of, the [tortious] act." *Gibbons*, 304 P.3d at 246 (quoting *Roberts v. Holland & Hart*, 857 P.2d at 497).

14

**2.** <u>Elements that Cannot Be Proven by Plaintiff: Element 1 – Plaintiff Cannot Establish that C Squared Knowingly Obtained Control Over Plaintiff's Property (Trade Secret Information) Without Authorization.</u>

**A.** In the Complaint, Plaintiff alleges generally that C Squared committed civil theft of Plaintiff's trade secrets.  [ECF No. 1, ¶¶ 83-88.]

**B.** Plaintiff does not allege any independent facts related to the claim for civil theft of trade secrets, but instead incorporates the allegations asserted in the misappropriation of trade secrets claim.  *Id.*

**C.** In discovery, Davis propounded Interrogatory No. 8 which asked Plaintiff to "Describe in detail all of the alleged Trade Secrets that you allege were misappropriated and/or stolen by Defendants."  (*See* Ex. 4, at 15.)

**D.** In response, Plaintiff refused to identify any specific trade secrets and instead incorporated by reference its response to Interrogatory No. 18 propounded by Davis in the 2016 Lawsuit.

**E.** However, the response that Plaintiff incorporated by reference to this very simple and straightforward discovery request similarly refused to identify any of Plaintiff's alleged trade secrets with the requisite specificity.  (Ex. 5, at 18.)

**F.** Instead, Plaintiff averred generally that it possessed "complex and unique business models, proprietary presentation packages, client databases, and form contracts used in its business of financial advisory services to the restaurant and franchise industry (the "Trade Secrets")."  (*Id.*)

**G.** Similarly, in the Rule 30(b)(6) deposition of Plaintiff, when asked to identify the specific trade secrets it possessed, Plaintiff was unable to do so beyond generic allusions to its

contact database, "financial models", "prospect lists", and "form documents".   (Ex. 6, at 15:11-16:21.)

**H.**  "It is hornbook law that 'the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret.'"  *Sutra, Inc.*, 2008 WL 2705580, at *3 (quoting Charles Tait Graves and Brian D. Range, Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute, 5 Nw. J. Tech. & Intell. Prop. 68, 69 (2006)).

**I.**  Under Colorado law, a party must describe its trade secrets "with sufficient particularity to identify the existence of its claimed trade secrets" and may not simply rely on generic categories or catchall phrases to describe such secrets.  *Saturn Sys., Inc.*, 252 P.3d at 522.

**J.**  Here, Plaintiff has failed to describe its trade secrets with sufficient particularity to identify the existence of its claimed trade secrets.  Instead, Plaintiff has simply relied on "generic categories" or "catchall phrases" to describe its alleged "secrets."  *See Rumnock*, 384 P.3d at 1265.  Absent particularity, Plaintiff's general statements fail to establish a trade secret as a matter of law. *See id.*; *see also Saturn Sys., Inc.*  252 P.3d at 522.

**K.**  Moreover, as set forth above, the undisputed evidence demonstrates that Plaintiff does not actually own any information that could constitute trade secret information.  The undisputed evidence confirms that the "Cypress contact database" was an amalgam of information supplied by Zuccarello and Davis and different independent contractors, including Christopherson.  (Exhibit 7, Jim Christopherson Dep., at 120:16-125:16 (Jan. 18, 2019).)  This database was freely shared within the Partnership, including Plaintiff's operation, automatically

synced to all contractors' devices, and was not deleted after a contractor ceased to work with Plaintiff.  (*Id.* at 117:14-120:15.)

**L.**  Plaintiff's responses to Defendants' discovery requests in this action confirm that Plaintiff did not have a "written policy" relating to the use and security of its alleged trade secrets.  (Ex. 4, at 18-19.)  In responding to Christopherson's written discovery requests in this action, Plaintiff confirmed that all of its alleged trade secrets were made freely available to everyone that worked with Plaintiff during the relevant timeframe.  (Ex. 8, at 12-13 ("Cypress states that all individuals who worked for Cypress were granted access to its trade secrets and confidential information if they were necessary for the individual to perform his or her job duties.").)

**M.** Plaintiff further failed to deny that in 2010, while Christopherson was working as an independent contractor for Plaintiff, Plaintiff directed Christopherson to copy all of Plaintiff's alleged trade secrets onto Christopherson's personal computer.  (*Id.* at 40-41.)

**N.**  Plaintiff never required Christopherson to delete this information when he ceased working with Plaintiff and Plaintiff did not have any policy regarding its agents and contractors' use of information that Plaintiff hosted on a cloud-based Box.com account.  (Ex. 7, at 119:17-120:16, 126:13-:16 ("Q: Did Cypress have any policy while you were at Cypress with respect to how its cloud-based storage accounts should be used?  A: None that was ever made aware of to me.").)

**O.**  With respect to the financial models, the undisputed evidence confirms that these models were created by Christopherson for his own use and during his own free time.  (*Id.*, at 94:12-117:4. ("Q: Did you consider this work your own property?  A: Absolutely.  Q: Why?

A: I – I created it.  I created it on my own time.  I wasn't – I was an independent contractor for Cypress.  I wasn't directed by Cypress to do it.  This was – this was something I did to make myself a more valuable financial person.").)  Christopherson elected to use this knowledge as part of the work that he did as an independent contractor for Plaintiff.  (*Id.* at 102:13-:22.)

P.   The fact that the financial models are the property of Christopherson in the first instance is further confirmed by the settlement agreement that Plaintiff entered into with Christopherson.  (*Id.* at 142:13-143:21.)  The settlement agreement expressly grants Plaintiff a license to use Christopherson's models and thereby implicitly confirms that these models were never owned by Plaintiff.  (Ex. 9, at 3.)

Q.   Accordingly, Plaintiff has failed to identify any protectable trade secret information with the requisite particularity, and summary judgment is warranted on Plaintiff's Third Claim for Relief – Civil Theft of Trade Secrets under Element 1: identification of specific trade secrets over which Davis purportedly knowingly exercised control.

3.   <u>Elements that Cannot Be Proven by Plaintiff: Element 2 – Plaintiff Cannot Establish that C Squared Specifically Intended to Permanently Deprive Plaintiff of any Property.</u>

A.   In the Complaint, Plaintiff alleges generally that C Squared committed civil theft of Plaintiff's trade secrets.  [ECF No. 1, at ¶¶ 83-88.]

B.   Entirely lacking from the Complaint, however, is any allegation that C Squared "specifically intended to permanently deprive" Plaintiff of any specific property.  *Id.*

C.   Plaintiff's civil theft claim is nothing more than a restated version of its claim for misappropriation.  Accordingly, Plaintiff has made no showing that C Squared intended to "permanently deprive" Plaintiff of anything.  *See Bermel v. Blueradios, Inc.,* No.

18

2014CV032139, 2015 WL 10013675, at *3 (Colo. Dist. Ct. June 24, 2015) (attached hereto as Exhibit 18) ("Defendant's affidavit declaring that Plaintiff has permanently deprived Defendant of confidential and/or trade secret information by copying emails to his personal account is not sufficient without more explanation—the Court agrees with Plaintiff that Defendant apparently still has all of the information it emailed to Plaintiff when he was working for Defendant."). Plaintiff's claim that C Squared is alleged to wrongfully possess a copy of certain information that Plaintiff also still possesses and freely uses is legally insufficient to state a cognizable claim of civil theft.  Plaintiff cannot point to any evidence that C Squared's alleged shared use of alleged trade secret information constitutes the requisite intent to deprive Plaintiff's use of the same information.

     **D.**  Accordingly, summary judgment is warranted because Plaintiff has failed to establish Element 2 of the Civil Theft Claim: specific intent to permanently deprive Plaintiff of its property.

     **4.**  <u>Elements that Cannot Be Proven by Plaintiff: Element 3 – Plaintiff Cannot Establish the Fact and Amount of Damage and Trace that Directly to Any Tortious Act of C Squared.</u>

     **A.**  In the Complaint, Plaintiff alleges that as a result of C Squared's alleged civil theft of trade secrets, "The Cypress Groups [*sic*] has been damaged, to an extent and in an amount to be proven at trial."  [ECF No. 1, ¶ 88.]

     **B.**  In response to written interrogatories propounded by Defendants, Plaintiff failed to substantively answer Interrogatory No. 19, which asked Plaintiff to "Describe in detail all of the categories of damages that you claim to have suffered as a result of Defendants' allegedly

wrongful acts and the amount of the damages that you contend that you have sustained with regard to each category of alleged damages." (Ex. 4, at 27.)

      **C.** Instead of providing a substantive response, Plaintiff instead indicated that its damages calculations would be "subject to expert testimony." (*Id.*)

      **D.** All of Plaintiff's employees and/or contractors similarly confirmed in deposition testimony that they did not possess any knowledge of how Cypress calculated its damages. (*See* Ex. 10, at 186:11-187:17; Ex. 11, at 196:13-23; Ex. 12, at 184:6-185:8; Ex. 13, at 149:8-150:1; Ex. 14, at 140:5-141:7; Ex. 15, at 33:24-34:25.)

      **E.** In the deposition of Shawn Fox in the 2016 Lawsuit, Mr. Fox admitted that he did not calculate any damages attributable to the alleged misappropriation of trade secrets. Instead, all Mr. Fox did was add the damages requested on the claims for intentional interference with contractual relations and unjust enrichment. (*See* Ex. 16, at 27:11-30:10.)

      **F.** Similarly, in the present action, Mr. Fox's report makes no attempt to determine what harm Plaintiff might have suffered and/or what profit C Squared might have gained as a result of its alleged misappropriation of trade secrets. (Ex. 17, at 33-34.) Rather than attempt to link his damages calculation to what actually transpired in this case, Mr. Fox attempts to project the expenses that C Squared would have been forced to incur to obtain the alleged trade secrets in the absence of the alleged misappropriation. (*Id.*)

      **G.** Beyond the highly speculative nature of these calculations, Mr. Fox's analysis wholly ignores the fact that if C Squared is found to possess information that it should not possess, C Squared can be ordered to return such information and will not derive any lasting benefit from the information. Instead, the only benefit that C Squared will have realized will

have been any undeserved profit that it earned in the meantime.  Again, however, Mr. Fox makes

no attempt to calculate the actual amount of such alleged compensatory damages.

      **H.**  To recover damages under Colorado law, damages must be proven to a reasonable

degree of certainty and a damages claim "may not be sustained by evidence which is speculative,

remote, imaginary, or impossible of ascertainment."  *Roberts*, 857 P.2d at 496-97.

      **I.**  Both the fact of damages and the amount of damages must be proved with

reasonable certainty and may not be merely speculative.  *Colo. Nat'l Bank*, P.2d at 174 (Colo.

1993) ("Lost profits are not recoverable if either the amount of the profit that would have been

earned or the fact that the plaintiff would have earned them is too speculative, remote, imaginary,

or impossible to ascertain." (quotation omitted)).

      **J.**  Rule 56 permits motions for summary judgment directed not only to the entire

case, but to issues and claims.  Fed. R. Civ. P. 56(a) (a party may move "for summary judgment

on all or part of the claim").  Summary judgment may be used, therefore, to reduce or narrow a

damages claim. *See Sandoval*, 2012 WL 2871667, at *8-9; *Mars, Inc.*, 527 F.3d at 1366-67.

      **K.**  Here, Plaintiff has not identified any non-speculative damages that are attributable

to C Squared's alleged civil theft.  Simply adding damages requested on the duplicative claims

for tortious interference with contractual relations and unjust enrichment that Plaintiff has

asserted in this case and in the 2016 Lawsuit does not suffice to establish non-speculative

damages on the standalone claim for civil theft alleged in this action.

      **L.**  Accordingly, Plaintiff's damages associated with the civil theft claim are

speculative, remote, and imaginary.  Summary judgment dismissing the misappropriation claim

is warranted.

### C.  C Squared is Entitled to Summary Judgment on Claim 3 – False Advertising.

####  1.  Burden of Proof and Elements.

Plaintiff has asserted claim for false advertising against C Squared under Section 43(a) of the Lanham Act for C Squared's alleged use of false or misleading information "likely cause confusion, or to cause mistake, or to deceive at to the affiliation, connection, or association of such person . . . or approval of his or her good, services, or commercial activities by another person."   To establish a claim for false advertising, Plaintiff bears the burden of proof to show: (1) C Squared made a materially false or misleading representation of fact; (2) in connection with their commercial advertising or promotion; (3) in commerce; (4) such representation misrepresents the nature of either parties' services or commercial activities; and (5) Plaintiff has been or is likely to be injured as a result.  *Wilson v. AdvisorLaw LLC*, No. 17-CV-1525-MSK, 2018 WL 4932088, at *3 (D. Colo. Oct. 11, 2018); *see also World Wide Ass'n of Specialty Programs v. Pure Inc*., 450 F.3d 1132, 1140 (10th Cir. 2006); J. Thomas McCarthy, *McCarthy on Trademarks* § 27:24 (5th ed. 2017).

The first and perhaps most basic essential element of a false advertising claim is a showing that the allegedly unlawful statement was in fact false or otherwise likely to deceive. *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 980 (10th Cir. 2002); *Electrology Lab., Inc.*, 169 F. Supp. 3d at 1157-58.   Given the widely understood nature and intent of advertising, "broad, vague, and commendatory language as well as subjective claims which cannot be proven either true or false" are deemed to be puffery and are not actionable under the Lanham Act.  *Intermountain Stroke Center, Inc. v. Intermountain Health Care, Inc.*, 638 Fed. Appx. 778, 787 (10th Cir. 2016) (internal citations omitted).  "Bald assertions of superiority or

general statements of opinion cannot form the basis of Lanham Act liability.  Rather the statements at issue must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Cocona, Inc. v. Singtex Indus. Co., Ltd.*, No. 14-cv-01593-MJW, 2014 WL 5072730, at *9 (D. Colo. Oct. 9, 2014) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000)).

Critically, a plaintiff cannot maintain standing for a false advertising claim unless the plaintiff shows "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).  In order to establish harm, a plaintiff must typically make a showing of customer confusion—preferably through customer reaction surveys showing that the allegedly false statements damaged the plaintiff's brand or standing within its industry.  *Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1252 10th Cir. 1999).  If a plaintiff cannot provide evidence of actual confusion, it must at least show a likelihood of confusion resulting from a false representation.  *Harvey Barnett, Inc.*, 338 F.3d at 1135.  However, the rebuttable presumption of reputational harm does not apply where the advertisement does not contain a comparison to another party's product.  *General Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1178 (D. Colo. 2015).

Regardless, for a plaintiff to recover damages, the plaintiff must provide evidence of a loss of business or lost profits as a proximate result of the allegedly false advertising.  *MDM Grp. Ass., Inc. v. Resortquest Intern., Inc.*, No. 06-cv-01518-PAB-KLM, 2009 WL 2924821 * 16 (D. Colo. Sep. 9, 2009).

**2.** <u>Elements that Cannot Be Proven by Plaintiff: Element 1 – Plaintiff Cannot Establish that C Squared Made a False or Intentionally Misleading Statement of Fact.</u>

**A.**   In its written discovery requests to Plaintiff, C Squared asked Plaintiff to identify every statement that it claimed amounted to false advertising and for each statement to describe the manner in which Plaintiff believes the statement to be false or misleading.  (Ex. 4, at 20.)

**B.**   In response, Plaintiff identified eight separate statements that C Squared allegedly published on its website[3] in 2016 that amounted to false advertising.  (*Id.* at 21-22.)  These allegedly false statements can generally be described as:

- Statement 1 – an "inference" that C Squared had been in business for many years.

- Statement 2 – a statement that C Squared is "the most experienced and multi-skilled industry advisory firm".

- Statement 3 – a statement that when Davis began working with Zuccarello (more than 16 years earlier) in 2000 that Zuccarello's existing operation had been a "fledgling" business.

- Statement 4 – a statement that Davis secured and managed a large engagement with Wendy's while working with Plaintiff in 2013 and 2015.

- Statement 5 – a statement that Davis originated and managed a large engagement with TGI Friday's while working with Plaintiff in 2016.

- Statement 6 – a statement that "we have completed hundreds of transactions involving thousands of restaurant units" and listing clients that Davis and Christopherson worked with while affiliated with Plaintiff.

- Statement 7 – a statement that C Squared was made up of a "team" of individuals, including Davis, Christopherson, Lisa Youngclaus (C Squared's marketing consultant), and Matt Boulden (C Squared's IT consultant).

---

[3] Plaintiff alleges that one of the allegedly false statements on C Squared's website was also included in a C Squared press release.  (Ex. 4, at 22.)

2988847.4

- Statement 8 – a testimonial from a client that allegedly did not approve the language that C Squared published on its website.

(*Id.*)

**C.** Each of the statements identified by Plaintiff is the very definition of "broad, vague, and commendatory language" that is not actionable under the Lanham Act.

**D.** For example, with respect to Statement 1, Plaintiff cannot point to a specific statement and instead claims there is some sort of undefined and nebulous "inference" on C Squared's website that C Squared has been around for many years.  Of course, even this claim belies the undisputed fact that, at the time, C Squared was operated by Davis and Christopherson, each of whom has decades of experience within the industry.

**E.** C Squared's statements regarding the experience of its agents and its standing within the industry (Statement 2) similarly amounts to a textbook case of sales puffery.  Any potential consumer would obviously read this superlative language as the type of laudatory, subjective, and ultimately unquantifiable sales copy used by all firms when promoting their businesses.

**F.**  Statement 3 relates to Plaintiff's status in 2000 and clearly relates to a subjective assessment of Plaintiff's status 16 years before the statement was published and cannot be measured as a true or false objective statement of fact.

**G.** C Squared's statements regarding the transactions that Davis and Christopherson ("we") worked on while affiliated with Zuccarello/Plaintiff are objectively true (Statement 4, Statement 5, and Statement 6).  Plaintiff attempts to quibble with their level of involvement in these hundreds of engagements, but again, the extent to which an engagement was originated by

25

one partner (Davis) versus another (Zuccarello) is necessarily a subjective question that is subject to a matter of opinion and not the type of objective, undeniable fact that can sustain a claim for false advertising.

**H.** With respect to Statement 7, Plaintiff does not identify what exactly it believes to be false within this statement.  Plaintiff does not deny that all the individuals identified as part of C Squared's "team" were in fact affiliated with C Squared at the time this website was published. Plaintiff has not pointed to anything that could plausibly suggest that this statement was false at the time that it was published.

**I.** Similarly, Plaintiff does not point to anything in Statement 8 that was in fact false. Plaintiff claims that C Squared did not have permission from the customer to publish the testimonial and tombstone.  Although that issue is itself a matter of dispute, even if Plaintiff is correct that C Squared did not have authority to publish these statements from the client, Plaintiff cannot point to any objective fact within this statement that is in fact false.

**J.** Plaintiff's failure to identify one single, objective fact that C Squared misrepresented in any of its promotional materials is telling of the trumped up and overzealous claims Plaintiff has brought against its competitor, C Squared.  Absent a showing that C Squared has published a false or intentionally misleading statement of fact in its advertising materials, Plaintiff's Lanham Act claim must be dismissed.

      **3.** <u>Elements that Cannot Be Proven by Plaintiff: Element 5 – Plaintiff Cannot Establish that It Was Damaged By Any of C Squared's Alleged False Statements.</u>

**A.** As set forth above, Plaintiff has only identified eight statements that allegedly constitute false advertising under the Lanham Act.

**B.**  Notably, only one of these statements (Statement 3) has any obvious and direct connection to Plaintiff.  Even that statement, however, relates to a subjective characterization of a thing that is now nearly two decades old—Plaintiff's status as "fledgling" in 2000 when Davis joined forces with Zuccarello to form the Partnership.  Plaintiff has made no showing as to how this relatively benign characterization of long-past events had caused Plaintiff to suffer any harm.

**C.**  Even if Plaintiff could show that any of the other seven statements is false or otherwise likely to cause customer confusion, Plaintiff has not made any effort to tie that alleged customer confusion to Plaintiff's own reputation or any business that Plaintiff has actually lost.  For example, Plaintiff has not attempted to demonstrate that it has lost any business as a result of C Squared's claims that C Squared is "the most experienced and multi-skilled industry advisory firm" and that Davis and Christopherson have completed hundreds of deals.

**D.**  Plaintiff has not submitted any evidence of customer confusion or otherwise identified a single deal that it has lost as a result of C Squared's advertising efforts.  (Ex. 6, at 70:20-72:10 ("Q: Has any person ever notified you that he or she thinks less of Cypress as a result of the statements on the C Squared website?  A: No.  Q: Are you aware of any evidence that any person thinks less of Cypress as a result of the statements on the C Squared website?  A: No.  But I characterize it like we did earlier, that's not something somebody is going to call you up and tell you.  Q: Sitting here today, you're not aware of any evidence that Cypress plans to present at trial of this matter showing that someone thinks less of Cypress as a result of statements on the C Squared website?  A: Not at this moment. . . . Q: But you're not able to point to any particular business transaction that Cypress has lost as a result of the C Squared website?  A: Correct.").)

**E.**  For his part, Plaintiff's damages expert skips right past this critical question of causation and simply assumes that Plaintiff now needs to expend up to $150,000 on "corrective advertising."  (Ex. 17, at 34-36.)  In citing to this amount of damages, Fox cites to "an analysis performed by Sikich's public relations consulting practice", *id.* at 34, but this "analysis" has never been disclosed as part of this case.

**F.**  Fox has been disclosed as a damages expert in this matter, and there is no suggestion that he will testify regarding what corrective public relations actions Plaintiff allegedly needs to perform—nor would he be qualified to provide any such testimony.  As such, the damages calculation related to false advertising in the Fox Report is not based on any non-hearsay admissible evidence, and Plaintiff has not identified any damages that might be recovered as a matter of law under the Lanham Act.

**G.**  Moreover, it is extremely telling that Plaintiff has not actually undertaken any of these prescriptive efforts to "repair" its reputation.  (Ex. 6, at 74:18-:22 ("Q: Can you identify any expenditures sitting here today that were specifically aimed at repairing Cypress's reputation as a result of those statements made on the C Squared website?  A: Not sitting here today.").)

**H.**  Ultimately, Plaintiff cannot point to any evidence that it has suffered any harm as a result of C Squared's alleged false advertising.  Accordingly, summary judgment should enter against Plaintiff's Lanham Act claim.

### D. Defendants are Entitled to Summary Judgment on Claim 5 – Intentional Interference with Prospective Business Advantage.

#### 1.  Burden of Proof and Elements.

To prove a claim of tortious interference with prospective economic advantage under Colorado law, Plaintiff must prove that: (1) Defendants engaged in improper conduct with

(2) the intention to induce or cause a third party not to enter into or continue business relations with Plaintiff, and (3) Defendants actually induced or caused such result. *Nobody in Particular Presents, Inc. v. Clear Channel Communications, Inc.*, 311 F. Supp. 2d 1048, 1118 (D. Colo. 2004). "Furthermore, a plaintiff must show that [(4)] there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Daniluk v. Norfolk Southern Railway Co.*, No. 13-cv-01304-CMA-CBS, 2015 WL 148560, at *3 (D. Colo. Jan. 12, 2015) (quoting *Klein v. Grunberg*, 44 F.3d 1497, 1506 (10th Cir. 1995).

> **2.** Elements that Cannot Be Proven by Plaintiff: Element 1 – Plaintiff Cannot Establish that Defendants Engaged in Improper Conduct.

**A.** Plaintiff has only identified two potential clients that Defendants allegedly interfered with—Brixx Franchise Systems, LLC ("Brixx") and Carolina Restaurant Group, Inc. ("CRG"). (Ex. 4, at 13-15.) As evidence for the allegedly improper steps that Defendants undertook to interfere with these clients, Plaintiff only points to the recruiting efforts that Davis engaged in with each of these clients while he was still working with Plaintiff. (*Id.*)

**B.** Where, as here, the parties are business competitors, Plaintiff must make a heightened showing that Defendants engaged in "improper conduct" in light of the business competition privilege: "one's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitor. In order not to hamper competition unduly, the [business competition privilege] entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services." *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1196 (Colo. App. 2009) (quoting Restatement (Second) of Torts, § 768 cmt. b). "This privilege

to engage in business and to compete rests on the belief that competition is necessary and desirable incident of free enterprise." *Id.*

      **C.** Under the business competition privilege, a competitor like C Squared may properly interfere with Plaintiff's potential contracts so long as C Squared does not use "wrongful means" such as "physical violence, fraud, civil suits and criminal prosecutions." *Id.* at 1197 (quoting Restatement (Second) of Torts § 768 cmt. e).

      **D.** The undisputed facts show that both Brixx and CRG were clients that were developed and/or managed by Davis while he and Zuccarello were working together in the Partnership.  At the Rule 30(b)(6) deposition of Plaintiff, Zuccarello admitted that both Brixx and CRG were longtime contacts of Davis, which were primarily cultivated and managed by Davis.  (Ex. 6, at 49:4-66:14.)

      **E.** Both Brixx and CRG were signed as clients of C Squared after the Partnership had been wrongfully terminated by Zuccarello and after Davis was no longer working with Zuccarello and Plaintiff.  At that time, Defendants were competitors of Plaintiff and they were free to use any lawful means to lure away Plaintiff's potential business.  That is exactly what happened here, and Plaintiff has not offered any facts showing that Defendants used improper means to engage either client.

      **F.** The business competition privilege serves as an absolute bar to Plaintiff's claim for tortious interference with prospective business advantage.  Consistent with the entire theme of Plaintiff's second lawsuit, Plaintiff has alleged this meritless claim to chill competition within the marketplace.  Plaintiff cannot demonstrate tortious interference, and the Court should enter summary judgment on this claim.

**3.** <u>Elements that Cannot Be Proven by Plaintiff: Element 4 – Plaintiff Cannot Establish that There Was a Reasonable Likelihood that a Contract Would Have Resulted But For Defendants' Actions.</u>

**A.** Again, Plaintiff claims that were only two clients with which Defendants allegedly interfered—Brixx and CRG.

**B.** Critically, however, the undisputed evidence confirms that Plaintiff made no effort to sign either of these clients. (Ex. 6, at 66:5-:14 ("Q: Did you or anyone else on behalf of Cypress ever reach out to representatives of CRG and ask for their business?  A: I can't be sure. I know I did not.  Whether someone else in our organization might have, I'm not sure – I can' be 100 percent positive.  Q: Did you or anyone else on behalf of Cypress ever reach out to Brixx and ask for their business after Mr. Davis left Cypress?  A: I don't believe so.").)

**C.** The undisputed evidence further demonstrates that Defendants were able to sign these two clients after Zuccarello wrongfully terminated the Partnership.  Both of these clients were longtime contacts of Davis.  (*Id.* at 49:4-66:14.)  Accordingly, once Zuccarello terminated the Partnership and forced Davis to disaffiliate from Plaintiff, there was little question that these clients would choose to work with Davis and his new competing venture.

**D.** Plaintiff cannot make any showing that there was a reasonable likelihood or probability that either of these clients would have done business with Plaintiff.  Accordingly, summary judgment should enter against Plaintiff's claim for tortious interference with prospective business advantage.

**E.  Defendants are Entitled to Summary Judgment on Claim 6 – Libel.**

> **1.**  <u>Burden of Proof and Elements.</u>

To prevail on a claim of libel against Defendants, Plaintiff bears the burden of proof to prove that Defendants engaged in: (1) a written communication; (2) whereby they published to a third party; (3) a false statement that was; (4) defamatory in nature.  *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App. 2013); *see also Keohane v. Stewart*, 882 P.2d 1293, 1297 (Colo.1994) (citing W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 111, at 771-85 (5th ed. 1984)). Whether a statement is defamatory in nature is a question of law.  *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004) (citing *Walker v. Associated Press*, 417 P.2d 486 (1966)).

> **2.**  <u>Elements that Cannot Be Proven by Plaintiff: Element 3 – A False Statement.</u>

**A.**  Defendants specifically asked Plaintiff to identify all documents in which Defendants made libelous false statements about Plaintiff.  Plaintiff refused to identify any such documents with particularity.  (Ex. 4, at 44.)

**B.**  If Plaintiff believed that Defendants had made specific, actionable false statements regarding Plaintiff, it would be easy for Plaintiff to point to those documents.  Instead, Plaintiff has refused to do so, and Defendants are left to guess as to the basis of Plaintiff's libel claim.

**C.**  In response to a similar discovery request from Christopherson, Plaintiff again refused to identify any libelous statements with any specificity and instead referred to the threadbare allegations of Plaintiff's Complaint.  (Ex. 8, at 26.)  All of those allegations relate to the allegedly false advertising statements included on C Squared's website.

**D.**  As demonstrated above, none of the statements on the C Squared website amounts to a false statement regarding an objective fact.  Rather, each of these statements amounts to nothing more than vague, subjective sales puffing and opinions.

**E.**  Moreover, the only one of these statements that specifically relates to Plaintiff is C Squared's claim that at the time that Davis began working with Zuccarello in 2000, the operation was "fledgling".  (Ex. 4, at 20-22.)

**F.**  Colorado law provides that "[a]n erroneous opinion is constitutionally protected and may not be the subject of a private defamation action."  *Bucher v. Roberts*, 595 P.2d 239, 241 (Colo. 1979).

**G.**  Whether or not Plaintiff's business was "fledgling" at the time that Davis and Zuccarello joined forces nearly two decades ago is clearly a question of subjective opinion. Plaintiff's written responses to Defendants' discovery requests fail to identify a single actionable statement that—if shown to be false—could sustain a claim for libel.

**H.**  Finally, at the Rule 30(b)(6) deposition of Plaintiff, Zuccarello identified one other instance where he alleged that Defendants had engaged in libel.  (Ex. 6, at 69:16-:20 ("Q: Setting aside what you have testified about your conversation with Mr. Eagan, putting those aside, the libel claim is based solely on the statements made on the C Squared website, correct? A: As of today [January 9, 2019], yes.").)  Specifically, Zuccarello claimed that a third-party (Mike Eagan) had told him that Davis had told Mr. Eagan that the ongoing litigation between the parties was in part related to the fact that Davis believed that Zuccarello was charging the Partnership for Zuccarello's personal expenses.  (*Id.* at 67:4-:24.)

**I.**   Plaintiff cannot demonstrate that this final statement amounted to libel for at least three reasons.  First, Zuccarello confirmed that this alleged statement was not made in writing—an essential element of any claim for libel.  (*Id.* at 69:3-:6 ("Q: Are you aware of any documents that reflect the conversation that Mr. Davis and Mr. Eagan allegedly had?  A: No.").)  Second, Zuccarello's account of this "conversation" is entirely based in hearsay, and Plaintiff has not presented any admissible evidence that Davis even made the alleged statements.  (*Id.* at 67:4 69:20.)  Finally, Plaintiff cannot demonstrate that Davis's alleged statement is false—whether or not Zuccarello improperly charged personal expenses to the Partnership to the direct and obvious detriment of Davis is one of the many unresolved issues in the 2016 Lawsuit.  (Ex. 2, at ¶ 231.)

**J.**   Ultimately, Plaintiff cannot point to any false statement of fact that Defendants have made in writing.

**3.**   <u>Elements that Cannot Be Proven by Plaintiff: Element 4 – False Statement that Is Defamatory in Nature.</u>

**A.**   As explained above, the only allegedly false statement that Plaintiff claims that Defendants have actually made about Plaintiff relates to the "fledgling" status of Plaintiff in 2000 when Davis and Zuccarello formed the Partnership.

**B.**   It is well-established in Colorado that "[d]efamation is a communication holding an individual up to contempt or ridicule that causes the individual to incur injury or damage." *Gordon*, 99 P.3d at 78.

**C.**   Here, there is no evidence that Plaintiff has faced "contempt or ridicule" because in one instance on one webpage Defendants' characterized Plaintiff as "fledgling" nearly two decades ago.

**D.**  Moreover, as demonstrated above with regard to Plaintiff's meritless claim for false advertising, Plaintiff has not presented any evidence that it has suffered any "injury or damage" as a result of any of Defendants' allegedly defamatory statements.[4]

**E.**  Plaintiff has failed to present any evidence to demonstrate defamation.  Because this is an essential element of libel, summary judgment must enter against Plaintiff's groundless claim for libel.

**F.  Defendant is Entitled to Summary Judgment on Claim 7 – Civil Conspiracy.**

**1.**  <u>Burden of Proof and Elements</u>

To prevail on a claim for civil conspiracy, Plaintiff bears the burden of proof to demonstrate that: (1) two or more persons; (2) came to a meeting of the minds; (3) on an object to be accomplished or a course of action to be followed; (4) and one or more overt unlawful acts are performed; (5) proximately resulting in damages.  *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1303 (Colo. App. 1998).  Critically, civil conspiracy is a derivative cause of action that is no independently actionable and therefore requires (6) a showing of some other unlawful overt act. *Bd. of Cty. Com'ns of Cty. of Park v. Park Cty. Sportsmen's Ranch, LLP*, 271 P.3d 562, 572 (Colo. App. 2011).

---

[4] Plaintiff's Complaint claims that Plaintiff has suffered actual damages and does not allege that Plaintiff has suffered defamation *per se*.  (ECF No. 1, ¶¶ 109-113.)  However, even if the Court permits such an expansive reading of the Complaint, Plaintiff has similarly not presented any evidence that Defendants have made any statement that is: "(1) on its face and without extrinsic proof, unmistakably recognized as injuries (defamatory meaning) and (2) specifically directed at the plaintiff (identity)."  *Gordon*, 99 P.3d at 78-79.

"[I]f the acts alleged to constitute the underlying wrong provide no cause of action, then no cause of action arises for the conspiracy alone." *Id.*; *see also Colorado Cmty. Bank v. Hoffman*, 338 P.3d 390, 397 (Colo. App. 2013).

   **2.**   Elements that Cannot Be Proven by Plaintiff: Element 6 – Plaintiff Cannot Prove
          Any Unlawful Underlying Act.

   **A.**   As set forth herein, Plaintiff cannot present sufficient evidence to sustain its burden of proof on any of the first six claims it has alleged in this action.

   **B.**   In the absence of any showing of some underlying unlawful conduct, Plaintiff cannot maintain a claim for civil conspiracy against Defendants.

   **C.**   Following Zuccarello's unilateral and unlawful decision to force Davis out of their longstanding Partnership, Davis joined forces with Christopherson to establish a competing venture.  Defendants have since fairly competed with Plaintiff and have not engaged in any unlawful actions.

   **D.**   Nevertheless, in an anticompetitive effort to chill Defendants' fair competition, Plaintiff has initiated this second lawsuit.  Because Plaintiff cannot demonstrate that Defendants have done anything unlawful, all of Plaintiff's claims up to and including Plaintiff's final claim for civil conspiracy must be rejected as a matter of law.

## CONCLUSION

WHEREFORE, based upon the foregoing arguments and authorities, Defendants respectfully requests that the Court enter summary judgment in favor of Defendants and against Plaintiff on all of Plaintiff's remaining claims for relief.

2988847.4

Dated:  February 13, 2019      Respectfully submitted,

IRELAND STAPLETON PRYOR & PASCOE, PC

*/s/  K.C. Groves*
K.C. Groves
Mark E. Lacis
James R. Silvestro
717 17th Street, Suite 2800
Denver, Colorado  80202
Tel. (303) 623-2700
Fax (303) 623-2062
Email:
kgroves@irelandstapleton.com
mlacis@irelandstapleton.com
jsilvestro@irelandstapleton.com

*Attorneys for Defendant Kent McCarty Davis and*
*C Squared Advisors, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 13th day of February, 2019, the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was e-filed with the Clerk of the Court using the CM/ECF system and such filing was sent electronically using the CM/ECF system to the following:

Bradford E. Dempsey
Jeffrey S. Roberts
Kyle R. Hosmer
3200 Wells Fargo Center
1700 Lincoln Street, Suite 3200
Denver, CO 80202
brad.dempsey@faegrebd.com
jeff.roberts@faegrebd.com
kyle.hosmer@faegrebd.com
*Attorneys for Plaintiff Cypress Advisors, Inc.*


/s/K.C. Groves
K.C. Groves

2988847.4